IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN SHEFCIK,                          )
                                       )
                Plaintiff,             )
                                       )        No. 06 C 5142
        v.                             )
                                       )
VILLAGE OF CALUMET PARK and            )
MARK DAVIS,                            )
                                       )
                Defendants.            )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff John Shefcik, a Village of Calumet Park police officer, filed a three-count

Complaint alleging reverse race discrimination and retaliation in violation of Title VII of the

Civil Rights Act, 42 U.S.C. § 2000e *et seq*., and a First Amendment retaliation claim. *See* 42

U.S.C. § 1983. Defendants Village of Calumet Park and Calumet Park's Police Chief Mark

Davis bring the present Motion for Summary Judgment pursuant to Federal Rule of Civil

Procedure 56(c). For the following reasons, the Court grants in part and denies in part

Defendants' summary judgment motion. Specifically, the Court grants Defendants' motion as to

Officer Shefcik's reverse race discrimination and retaliation claims, but denies Defendants'

motion regarding Officer Shefcik's First Amendment retaliation claim in Count I of the

Complaint.

## BACKGROUND

### I.      Introduction

Officer John Shefcik, who is white, is a Calumet Park police officer. (R. 37-1, Defs.'

Rule 56.1 Stmt. Facts ¶ 1.) Defendant Village of Calumet Park is a municipality organized under

the laws of the State of Illinois. (*Id.* ¶ 2.) Since August 2002, Mark Davis, a black male, has been the Chief of the Police for Calumet Park. (*Id.* ¶ 3; R. 51-1, Pl.'s Rule 56.1 Stmt. Facts ¶ 2.) Assistant Chief Susan Rockett, who is white, came to Calumet Park in August 2002 as a Commander of Police. (Def.'s Stmt. Facts ¶ 5.) On November 15, 2004, Melvin Davis, who is black, was appointed Commander of Police. (*Id.*) Currently, there are between 21-22 full-time police officers with the Calumet Park Police Department. (*Id.*) There are four Sergeants within the police department, including Gregory Jones, John Rigoni, Gerald Corrigan, and Mark Groszek – all of whom are white. (*Id.* ¶ 6.)

## II.    Manpower Reduction Issues

Prior to Chief Davis taking over in August 2002, between four and five officers worked each shift. (*Id.* ¶ 12.) On the weekends, seven to eight officers worked on the street. (*Id.*) When Chief Davis arrived, he determined that 30-40 poorly trained part-time police officers worked for Calumet Park. (*Id.*) Chief Davis believed that many of the part-time officers were unskilled in a number of areas and that those officers' mistakes cost Calumet Park money. (*Id.*) Chief Davis also believed that the full-time officers should perform the work instead of the part-time officers. (*Id.*)

In November 2002, Chief Davis reduced the number of officers to three per shift by eliminating the police department's reliance on part-time officers. (*Id.* ¶ 13.) Following the decrease in number of officers per shift, Officer Shefcik, as a union representative, began meeting with Chief Davis to address the manpower reduction and other issues. (*Id.*) Chief Davis explained to Officer Shefcik that the Village did not have enough calls for service to warrant the prior amount of officers on the road. (*Id.*; Pl.'s Stmt. Facts ¶ 9.)

### III.    Officer Shefcik's Union Grievances, Letters, & FOIA Requests

Prior to 2003, Officer Shefcik served as the secretary for the police union, and in January 2003, the union elected him president.  (Defs.' Stmt. Facts ¶ 11; Pl.'s Stmt. Facts ¶ 1.)  From January 2003 until March 2007, Officer Shefcik filed at least fifty grievances on behalf of himself and union members.  (Defs.' Stmt. Facts ¶ 11.)  In response to Defendants' summary judgment motion, Officer Shefcik identifies certain instances in which he claims that he spoke as a citizen of public concern in support of his First Amendment claim.  Specifically, on January 3, 2003, April 11, 2003, April 20, 2004, and July 15, 2004, Officer Shefcik filed union grievances regarding manpower shortages on the different shifts.  (Pl.'s Stmt. Facts ¶ 3; Defs.' Stmt. Facts ¶¶ 15, 19.)  Also, on April 11, 2003, July 15, 2004, and August 1, 2004, Officer Shefcik filed union grievances regarding similar manpower shortages, including claims that the Village was trying to avoid paying the police officers overtime.  (Defs.' Stmt. Facts ¶ 19.)

In 2004, Officer Shefcik wrote a letter to Chief Davis addressing the safe amount of hours that police officers should work every day.  (*Id.* ¶ 24; Pl.'s Stmt. Facts ¶ 4.)  In January 2005, Officer Shefcik filed a Freedom of Information Act ("FOIA") request for information regarding a possible violation of Illinois' Open Meeting Act.  (Pl.'s Stmt. Facts ¶ 5.)  In June 2005, Officer Shefcik filed another FOIA request concerning Calumet Park's new lateral hiring procedure for the police department.  (*Id.*; Defs.' Stmt. Facts ¶ 74.)  In February 2006, Officer Shefcik and two other union officers sent a letter to Calumet Park's Village Manager Tom Griffin, Mayor Buster Porch, and Village Trustee Joe Dupar alleging that employees and union members had been subjected to a hostile work environment, among other complaints.  (Defs.' Stmt. Facts ¶ 64; Pl.'s Stmt. Facts ¶ 6.)  In March 2006, Officer Shefcik met with Dupar and

Griffin regarding the issues raised in the February 2006 letter. (Defs.' Stmt. Facts. ¶ 75; Pl.'s Stmt. Facts ¶ 6.) In May 2006, Officer Shefcik made a FOIA request concerning police officers' salaries. (Defs.' Stmt. Facts ¶ 74.) Finally, in August 2006, Officer Shefcik filed a FOIA request regarding the alleged illegal use of 911 emergency funds. (Def.'s Stmt. Facts ¶ 74; Pl.'s Stmt. Facts ¶ 5.)

## IV.  Alleged Retaliatory Conduct

Officer Shefcik points to several instances of alleged retaliatory conduct that he relies upon to establish his First Amendment retaliation claim. This conduct includes: (1) his December 12, 2004, one-day suspension; (2) the denial of a tactical supervisor position in February 2005; (3) the denial of commercial vehicle training in April 2006; (4) Defendants' failure to select him for the Criminal Intelligence Division ("CID") unit in September 2005; (5) the denial of overtime work in September 2004; (6) his October 2005 three-day suspension for improper evidence handling; (7) his February 2006 assignment to strip mall detail; and (8) the denial of a promotion to investigator in March 2006. (Defs.' Stmt. Facts ¶¶ 34, 40, 43, 48, 49, 52, 66; Pl.'s Stmt. Facts ¶¶ 26, 36.)

## V.  EEOC Charges

On November 14, 2005, Officer Shefcik filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging reverse race discrimination. (Defs.' Stmt. Facts ¶ 56; R. 61-1, EEOC Charge 210-2006-01030). Officer Shefcik specifically charged that the Calumet Park Police Department subjected him to different terms and conditions of employment and denied him training and promotions based on his race. (*Id.*) On March 10, 2006, Officer Shefcik filed a Supplemental Charge of Discrimination alleging race

discrimination and retaliation. (Defs.' Stmt. Facts ¶ 73; R. 61-1, EEOC Charge 440-2006-02656.) In his Supplemental EEOC Charge, Officer Shefcik asserted that since he filed his EEOC Charge in November 2005, the Calumet Park Police Department denied him two promotions and overtime pay. (*Id*.) The EEOC issued Officer Shefcik's Notice of Rights letter on July 18, 2006. (R. 1-1, Compl. ¶ 7; R. 61-1, EEOC Letter.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

I.   **First Amendment Retaliation Claim**

The First Amendment protects freedom of speech and expressive conduct and generally

prevents the government from proscribing such activities. *RAV v. City of St. Paul, Minn.,* 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992). "The Supreme Court has made clear that public employees do not surrender all of their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Morales v. Jones,* 494 F.3d 590, 595 (7th Cir. 2007). "In such circumstances, an employer may not retaliate against an employee for engaging in protected speech." *Sigsworth v. City of Aurora, Ill.,* 487 F.3d 506, 509 (7th Cir. 2007).

To establish a prima facie case of First Amendment retaliation, Officer Shefcik must set forth evidence that: (1) his speech was constitutionally protected, (2) he suffered a deprivation likely to deter free speech, and (3) his speech was a motivating factor in the employer's action. *See Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006). If Officer Shefcik establishes a prima facie First Amendment retaliation claim, Defendants may rebut Officer Shefcik's claim by establishing that they would have taken the same actions in the absence of Officer Shefcik's protected speech. *See Ashman v. Barrows*, 438 F.3d 781, 784 (7th Cir. 2006). The Court first turns to whether Officer Shefcik's speech is constitutionally protected.

A.     *Garcetti v. Ceballos*

The Supreme Court has recently narrowed the standard of protected speech in the context of government employees, holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos,* ___U.S. ___, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689 (2006). "*Garcetti* requires that

6

before analyzing whether an employee's speech is of public concern, a court must determine whether the employee was speaking 'as a citizen' or, by contrast, pursuant to his duties as a public employee." *Sigsworth,* 487 F.3d at 509-10; *see also Vose v. Kliment*, ___ F.3d ___, 2007 WL 3120091, at *4 (7th Cir. Oct. 26, 2007) (whether speech is a matter of public concern no longer the initial inquiry in First Amendment retaliation claims); *Spiegla v. Hull,* 481 F.3d 961, 965 (7th Cir. 2007) ("*Garcetti* made clear that public employees speaking 'pursuant to their official duties' are speaking as employees, not citizens, and thus are not protected by the First Amendment regardless of the content of their speech.").

Here, Defendants argue that Officer Shefcik's speech is not protected by the First Amendment because it concerned the working conditions within the Calumet Park Police Department, and thus was made pursuant to Officer Shefcik's official work duties. Officer Shefcik, on the other hand, contends that his speech is protected because it involved his union activities, which included filing collective grievances, writing letters and attending meetings, and making FOIA requests on behalf of the union. As such, Officer Shefcik contends that his union activities are not part of what he is "employed to do." *See Garcetti,* 126 S.Ct. at 1960.

Indeed, in a post-*Garcetti* case, the Seventh Circuit has concluded that a deputy sheriff's "comments that precipitated the adverse action taken against him were made in his capacity as a union representative, rather than in the course of his employment as a deputy sheriff," and thus "the Supreme Court's recent decision in *Garcetti v. Ceballos,* ___U.S. ___, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), is inapposite." *Fuerst v. Clarke,* 454 F.3d 770, 774 (7th Cir. 2006). In other words, a public employee who makes a statement in his capacity as a union representative is speaking as a citizen, not as an employee. *See Spiegla,* 481 F.3d at 966 (citing *Fuerst,* 454

F.3d at 774).

As discussed in detail below, Officer Shefcik's union grievances, certain FOIA requests, and letters to Chief Davis and Village of Calumet officials were made on behalf of the union, and thus *Garcetti* does not bar the Court from determining whether such speech is protected by the First Amendment. The Court thus turns to whether Officer Shefcik's speech in his capacity as a union representative is a matter of public concern under the balancing test first stated in *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.E.2d 811 (1968) and later clarified by *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

### B.     *Connick-Pickering*

"Under the *Connick- Pickering* test, a public employee can establish that his speech is constitutionally protected if (1) the employee spoke as a citizen on matters of public concern, and (2) the interest of the employee as a citizen in commenting upon matters of public concern outweighs the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees." *Sigsworth,* 487 F.3d at 509. To determine whether a public employee "spoke as a citizen on a matter of public concern," the Court examines "the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147-48; *see also Spiegla*, 481 F.3d at 965. "In evaluating these factors, we look to whether the government employee sought to 'bring to light actual or potential wrongdoing or breach of public trust.'" *Miller v. Jones*, 444 F.3d 929, 935 (7th Cir. 2006) (quoting *Connick,* 461 U.S. at 148). Accordingly, the *Connick* public concern element must relate to a matter of "political, social, or other concern to the community." *Id.* (quoting *Connick*, 461 U.S. at 146). On the other hand, "when a public employee speaks not as a citizen upon matters of public

concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147. Whether a public employee's speech is protected by the First Amendment is a question of law. *See Miller*, 444 F.3d at 935; *see also Connick,* 461 U.S. at 148 n.7 ("inquiry into the protected status of speech is one of law, not fact.").

### 1. Matter of Public Concern

Officer Shefcik argues that his union grievances, letters, meeting with Village officials, and FOIA requests are a matter of public concern because they addressed police manpower reductions on certain shifts in Calumet Park, as well as officer and public safety. Defendants, however, contend that Officer Shefcik's complaints only concern internal work grievances. The Court thus turns to the content, context, and form of Officer Shefcik's union grievances, letters, meeting, and FOIA requests to determine if Officer Shefcik's statements constitute a matter of public concern. *See Connick,* 461 U.S. at 147-48.

Officer Shefcik's grievances on behalf of the union include the following: On January 3, 2003, Officer Shefcik filed a grievance on behalf of the union concerning the afternoon shift on January 2, 2003, in which only two officers were assigned because this scheduling posed "a serious safety issue to the two officers scheduled." (R. 37-1, Ex. 1, Shefcik Dep., Ex. 2.) On April 11, 2003, Officer Shefcik filed a grievance concerning the April 6, 2003, evening shift because four officers were not on duty. (Ex. 3.) Also on April 11, 2003, Officer Shefcik filed a grievance because officers were not given overtime pay. (Ex. 4.) On April 20, 2004, Officer Shefcik filed a grievance about the April 19, 2004, evening shift at which three officers were

assigned.  (Ex. 7.)  On July 15, 2004, Officer Shefcik filed another grievance concerning dates in June and July 2004 in which he stated that the Village was trying to avoid overtime pay by reducing the number of officers per shift and thus placing "the officers safety in jeopardy."  (Ex. 8.)  Officer Shefcik filed another grievance on July 15, 2004, in which he asserted that the Village was trying to avoid paying the officers overtime on July 12, 2004, by scheduling three officers per shift.  (Ex. 9.)  On August 1, 2004, Officer Shefcik filed a similar grievance about the Village's alleged avoidance of overtime pay.  (Ex. 10.)

In his 2004 letter to Chief Davis, Officer Shefcik, on behalf of the union, addressed issues of seniority, shifts, the safe amount of hours the officers worked per day, and his discussions with the union regarding these topics.  (Ex. 11.)  Officer Shefcik's February 2006 letter – also on behalf of the union – to the Village of Calumet officials included allegations of a racially hostile work environment,[1] as well as claims that an "administrator" used profanity, the administration bullied employees, they had a lack of labor management meetings to address grievances, citizens in the community were concerned about the "decline of the Police Department," and pending EEOC charges and federal employment lawsuits, among other related complaints.  (Ex. 34.)  In March 2006, Officer Shefcik and the co-authors of the February 2006 letter met with Village officials regarding the letter.  (Defs.' Stmt. Facts ¶ 75.)

In January 2005, Officer Shefcik, as the union president, filed a FOIA request for information regarding a possible abuse of the Illinois Open Meetings Act concerning a Police Board and Fire Commissioners' meetings.  (Pl.'s Stmt. Facts ¶ 5.)  Specifically, Officer Shefcik

---

[1] Officer Shefcik did not bring a reverse race discrimination/hostile work environment claim under Title VII in his Complaint.

requested the minutes of the Board of Police and Fire Commissioner's meeting of January 17, 2005.  (R. 62-1, Rule 56.1 Ex.)  In June 2005, Officer Shefcik filed a second FOIA request regarding the Village's lateral hiring procedure for the police department.  (*Id.*)  In May 2006, Officer Shefcik, as the union president, sent a letter to the Mayor of Calumet Park requesting a list of all current police officers covered by the union contract and their salaries.  (Defs.' Stmt. Facts ¶ 74; R. 62-1 Rule 56.1 Ex.)  Finally, in August 2006 Officer Shefcik filed a FOIA request regarding the alleged illegal use of 911 emergency funds.[2]  (*Id.*)

Taking the facts in a light most favorable to Officer Shefcik – as the Court is required to do at this procedural posture – although some of the content of Officer Shefcik's grievances and FOIA requests may be characterized as internal office affairs, other complaints and queries focus on community concerns, such as police officer safety, public safety, and a possible abuse of the Illinois Open Meetings Act concerning a Police Board and Fire Commissioners' meeting.  *See Carreon v. Illinois Dep't of Human Servs.,* 395 F.3d 786, 791 (7th Cir. 2005) (citation omitted); *see also Phelan v. Cook County,* 463 F.3d 773, 791 (7th Cir. 2006) ("fact that an employee has a personal stake in the subject matter of the speech does not necessarily remove the speech from the scope of public concern").  Indeed, the Seventh Circuit has recognized that there are few

---

[2]  Because there is no indication from the record that Officer Shefcik filed the August 2006 FOIA request as the union president rather than in his capacity as a police officer, this FOIA request does not survive the *Garcetti* test.  *See Spiegla v. Hull,* 481 F.3d 961, 965 (7th Cir. 2007) ("*Garcetti* made clear that public employees speaking 'pursuant to their official duties' are speaking as employees, not citizens, and thus are not protected by the First Amendment regardless of the content of their speech.").  Moreover, Officer Shefcik failed to present sufficient evidence that his August 2006 FOIA request concerning the 911 emergency funds motivated Defendants' retaliatory conduct because he does present evidence of any retaliatory conduct occurring after March 2006.  *See Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006).

matters "of greater public concern in a large metropolitan area than police protection and public safety." *Gustafson v. Jones,* 290 F.3d 895, 907 (7th Cir. 2002) (quoting *Auriemma v. Rice,* 910 F.2d 1449, 1460 (7th Cir. 1990) (en banc)).

More specifically, some of Officer Shefcik's statements to his supervisors and Village officials raised the issue of the police officers' safety, including his July 2003 and July 2004 union grievances, his 2004 letter to Chief Davis, his 2006 letter to the Village officials, and his March 2006 meeting with Village officials, as well as his other union grievances about the allocation of the police officers. *See Barth v. Village of Mokena,* No. 03 C 6677, 2006 WL 862673, at *28 (N.D. Ill. Mar. 31, 2006) (issues of police officer safety matter of public concern); *Mills v. City of Evansville,* No. 03 C 0183, 2005 WL 1939917, at *4 (S.D. Ind. June, 28, 2005) ("allocation of police officers also affects public safety") (Tinder, J.). Indeed, if a police officer's safety is at issue, the police officer's ability to assist the needs of the community are also jeopardized. *See Richter v. Village of Oak Brook,* No. 01 C 3842, 2003 WL 22169763, at *12 (N.D. Ill. Sept. 19, 2003). In addition, Officer Shefcik's FOIA request regarding the alleged abuse of the Illinois Open Meetings Act is also a matter of public concern because it pertains to public policy. *See Gerwin v. Livingston County Bd.,* 345 Ill.App.3d 352, 359, 802 N.E.2d 410, 280 Ill.Dec. 485 (Ill.App.Ct. 2003) (purpose of the Open Meetings Act is to prohibit secret deliberations by public bodies).

On the other hand, Officer Shefcik's speech concerning the police officers' overtime pay, officer seniority, whether the administration bullied police officers, an administrator's use of profanity, the administration's lateral hiring procedure, and police officers' salaries are not matters of public concern. Instead, this speech concerns internal police office affairs. *See*

*Miller*, 444 F.3d at 935.

After reviewing the content, context, and form of Officer Shefcik's complaints on behalf of the union – in the context of the record as a whole – Officer Shefcik was speaking out on a matter of public concern. *See Connick,* 461 U.S. at 147-48. As such, the Court turns to the next element of the *Connick-Pickering* test – whether "the interest of the employee as a citizen in commenting upon matters of public concern outweighs the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees." *Sigsworth,* 487 F.3d at 509; *see also Pickering,* 391 U.S. at 568.

### 2. Balancing Test

If a public employee's speech is a matter of public concern, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti,* 126 S.Ct. at 1958. "A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Id.* Therefore, "[e]ven if an employee's speech is on a matter of public concern, a government employer is entitled to restrict that speech if it can carry its burden of proving that the interest of the public employee as a citizen in commenting on the matter is outweighed by the interest of the state, as employer, in promoting effective and efficient public service." *Gustafson,* 290 F.3d at 909.

The Seventh Circuit has identified certain factors for courts to consider when determining the "highly fact-specific inquiry" of whether the government's interest sufficiently outweighs a public employee's First Amendment interests. *See Gustafson,* 290 F.3d at 909. These

interrelated factors include: "(1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place, and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public." *Gustafson,* 290 F.3d at 909.

Under the first two factors, it is well-established that "[d]eference to the employer's judgment regarding the disruptive nature of an employee's speech is especially important in the context of law enforcement." *Kokkinis v. Ivkovich,* 185 F.3d 840, 845 (7th Cir. 1999). In support of these first factors, Defendants present Chief Davis' deposition testimony that he had an ongoing concern about Officer Shefcik's behavior, namely, that Officer Shefcik was insubordinate, disrespectful, and that he tried to impede the operations of the police department. (*See* Defs.' Stmt. Facts ¶¶ 21, 23, 28, 61-63.) In *Kokkinis,* however, the record at summary judgment contained more than the deposition testimony of the police chief that he was concerned about the operations of the police department – it included testimony of other police officers that supported the reasonableness of the police chief's beliefs. *Id.* at 846; *Gustafson,* 290 F.3d at 895. Here, Defendants do not point to any other evidence in the record supporting the reasonableness of Chief Davis' beliefs. Therefore, this factor does not weigh in favor of Defendants' interest based on the record before the Court.

Moreover, Defendants fail to address the other factors set forth in *Gustafson*, which weigh in favor of Officer Shefcik. Viewing the context, time, place, and manner of Officer

Shefcik's speech under the fourth and fifth factors, for instance, he raised his concerns through the proper channels, namely, via union grievances, FOIA requests, and letters to Chief Davis and Village officials. *See Gustafson*, 290 F.3d at 911-12. In contrast, the Seventh Circuit has concluded that an individual firefighter's news release about his supervisor's alleged favoritism – without taking advantage of the internal complaint procedures or directly addressing his concerns to his supervisor – weighed against the firefighter. *See Greer v. Amesqua*, 212 F.3d 358, 371-72 (7th Cir. 2000) ("manner and means of the employee's protestation are key considerations in balancing the employer's and employee's interests under *Pickering*"); *see also Kokkinis,* 185 F.3d at 842, 846 (police officer's criticism of police chief on local news broadcast weighed against police officer).

As for the other factors in the Court's *Pickering* analysis, there is no indication from the record that Officer Shefcik's speech on behalf of the union impeded his ability to perform his job as a police officer. In addition, the matter of public safety and police officer safety is an issue on which debate is vital to the administration's decision-making concerning the allocation of police officers on the various shifts. Finally, as discussed in detail above, Officer Shefcik was not speaking as an employee of the police department when filing his union grievances.

After weighing the *Pickering* factors, Defendants have not met their burden of proving that Officer Shefcik's interest in commenting on public safety and police safety is outweighed by the police department's interest in promoting effective and efficient public service. *See Gustafson,* 290 F.3d at 909. Therefore, the Court turns to whether Officer Shefcik's speech was a substantial or motivating factor in the alleged retaliation. *See Massey,* 457 F.3d at 716.

### C.     Motivating Factor

Under this next factor, the Court must assess whether Officer Shefcik has established that Defendants' alleged retaliatory conduct was motivated by his constitutionally protected speech. *See Phelan,* 463 F.3d at 790. The "motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Spiegla v. Hull,* 371 F.3d 928, 942 (7th Cir. 2004). Officer Shefcik is not required to come forward with direct evidence of Defendants' motivation, but may present "[c]ircumstantial proof, such as the timing of events or the disparate treatment of similar individuals, may be sufficient to establish the defendant's retaliatory motive." *Massey,* 457 F.3d at 717.

Here, Officer Shefcik argues that Defendants have subjected him to a "continuous stream" of retaliation stemming from his first union grievances in 2003.[3] In support of his argument that Chief Davis was motivated to retaliate against him based on his union grievances, Officer Shefcik points to Chief Davis' deposition testimony in which Chief Davis stated that "[t]he war is who is going to run the police department, the Union or the Chief of Police." (Pls.' Stmt. Facts ¶ 19.) Officer Shefcik also cites to a January 2004 memorandum from Chief Davis to him:

> I regret to inform you that your actions are impeding the operations of this department and your continued position to harass this administration with petty and childish grievances will be challenged and I will be seeking legal action against you and members of your [union]. You have demonstrated a lack of professional skills, immaturity and incompetence in your leadership position and you are preventing growth

---

[3] Defendants argue that certain alleged retaliatory actions are time-barred under Illinois' two-year statute of limitations applicable to Section 1983 actions in federal courts sitting in Illinois. *See Jogi v. Voges,* 480 F.3d 822, 836 (7th Cir. 2007). Defendants, however, fail to present sufficient legal arguments for the Court to make any such timeliness determinations. *United States v. Hook,* 471 F.3d 766, 775 (7th Cir. 2006) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are not supported by pertinent authority, are waived.").

with your perpetual desire to impede the direction of this department.

(Defs.' Stmt. Facts ¶ 28.)

Officer Shefcik also presents evidence of suspicious timing, including that after he filed his January 25, 2005, FOIA request of which Chief Davis was aware, the administration denied him the position of tactical unit supervisor a month later. (Pls.' Stmt. Facts ¶ 5; Defs.' Stmt. Facts ¶ 40.) Similarly, after Officer Shefcik sent his February 2006 letter to the Village officials of which Chief Davis was aware, he was assigned to strip mall detail and was passed over for a promotion to investigator. (Pls.' Stmt. Facts ¶¶ 6, 26, 28; Defs.' Stmt. Facts ¶ 66.)

Viewing this evidence and all reasonable inferences in favor of Officer Shefcik, Officer Shefcik has raised a genuine issue of material fact that his union grievances, January 2005 FOIA request, letters, and meeting with Village officials were a substantial or motivating factor behind Defendants' retaliatory conduct. More specifically, from Chief Davis' statements, a reasonable juror could infer that Chief Davis was motivated to retaliate against Officer Shefcik based on Chief Davis' disdain for Officer Shefcik's "petty and childish" union grievances. Also, Officer Shefcik has demonstrated improper motive for summary judgment purposes based on the timing of the alleged retaliatory conduct. *See Massey,* 457 F.3d at 717.

### D. Defendants' Rebuttal

Because Officer Shefcik has established a prima facie First Amendment retaliation claim, the Court turns to whether Defendants have rebutted Officer Shefcik's claim by establishing that they would have taken the same actions in the absence of Officer Shefcik's protected speech. *See Ashman*, 438 F.3d at 784; *see also Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In other words, "[o]nce the plaintiff proves

that an improper purpose was a motivating factor, the burden shifts to the defendant, as mandated by *Mt. Healthy,* to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct." *Spiegla,* 371 F.3d at 943; *see also Massey*, 457 F.3d at 717.

In their opening brief, instead of arguing that Chief Davis' would have made the same decision not to assign Officer Shefcik to be the tactical supervisor in absence of Officer Shefcik's speech, Defendants argue that Chief Davis' decision was not an adverse employment action because the assignment did not provide for any extra pay. Defendants' argument is misplaced because Section 1983 claims do not require an adverse employment action within the meaning of Title VII. *Mosely v. Board of Educ. of City of Chicago,* 434 F.3d 527, 533-34 (7th Cir. 2006). Instead, retaliatory conduct "need not be extreme" to constitute First Amendment retaliation. *Massey,* 457 F.3d at 720; *Mosely*, 434 F.3d at 534 (alleged injury need not be great to be actionable).

As discussed in the context of Officer Shefcik's Title VII retaliation claim below, Defendants' failure to select Officer Shefcik for the Criminal Intelligence Division ("CID") unit in September 2005 is not retaliatory conduct because Officer Shefcik testified at his deposition that he did not tell anyone he wanted to be a member of the CID unit. (Defs.' Stmt. Facts ¶ 48; Ex. 1, Shefcik Dep., at 46-47.) Also, based on the facts in the record as discussed in detail under Officer Shefcik's Title VII reverse race discrimination claim, Defendants would have promoted the chosen candidate, Officer Anthony Beattie, over Officer Shefcik to investigator in March 2006 regardless of Officer Shefcik's speech based on the Officer Beattie's superior qualifications.

Meanwhile, Defendants argue that Officer Shefcik "violate[d] the rules that led to any disciplinary actions," presumably in relation to Officer Shefcik's December 2004 one-day suspension and October 2005 three-day suspension. Defendants' cursory argument does not satisfy their burden of establishing that there are no genuine issues of material fact for trial concerning these suspensions. *See Celotex Corp.,* 477 U.S. at 323. Defendants also fail to address the commercial vehicle training in April 2006, give the reasons for denying the tactical supervisor position, and flesh out the December 2004 disciplinary action until their reply brief. *See Amerson v. Farrey,* 492 F.3d 848, 852 (7th Cir. 2007) ("Arguments raised for the first time in a reply brief are waived."). Moreover, in their reply brief, Defendants argue that Chief Davis provided legitimate reasons for his actions as reflected in their Rule 56.1 Statement of Facts. The purpose of Rule 56.1 statements, however, is to identify the relevant evidence supporting the material facts – not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006); *Solaia Tech. LLC v. Arvinmeritor, Inc.,* 361 F.Supp.2d 797, 826-27 (N.D. Ill. 2005). Finally, Defendants fail to address denying Officer Shefcik the opportunity to work overtime in September 2004, and his February 2006 assignment to strip mall in the context of his First Amendment claim.

Accordingly, Defendants have failed in their burden of establishing that they would have taken the same actions against Officer Shefcik in the absence of his protected speech. *See Massey,* 457 F.3d at 717. Because Defendants have not rebutted Officer Shefcik's prima facie First Amendment retaliation claim, the Court denies Defendants' summary judgment motion as to Count I of the Complaint.

### E. Qualified Immunity

Finally, the Court rejects Chief Davis' argument that he is entitled to qualified immunity. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Belcher v. Norton,* 497 F.3d 742, 749 (7th Cir. 2007). As the Seventh Circuit explained in *Gustafson*, the key elements of a First Amendment retaliation claim have been clear for years – a public employee who exercises his First Amendment speech rights about police protection and public safety raises a matter of public concern and a public employer may not retaliate against the employee for exercising these First Amendment rights. *Id.* at 912-13.

## II. Title VII Reverse Race Discrimination Claim

Next, Officer Shefcik brings a reverse race discrimination claim pursuant to Title VII. Under Title VII, it is unlawful to "discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Thanongsinh v. Board of Educ., Dist. U-46,* 462 F.3d 762, 772 (7th Cir. 2006) (quoting 42 U.S.C. § 2000e-2(a)(1)). A plaintiff may prove intentional race discrimination by either the direct or indirect method of proof as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Officer Shefcik attempts to establish reverse race discrimination under both methods of proof.

### A. Indirect Method of Proof

#### 1. Prima Facie Elements

Under the *McDonnell Douglas* indirect method of proof, a plaintiff attempting to establish a claim of race discrimination must show four prima facie elements: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance

20

expectations; (3) he suffered an adverse employment action; and (4) his employer treated him less favorably than similarly situated individuals who are not members of his protected class. *See McDonnell Douglas*, 411 U.S. at 802; *Ballance v. City of Springfield,* 424 F.3d 614, 617 (7th Cir. 2005).

Although the rights under Title VII apply to men and whites – as well as members of various minority groups and women, *see Mlynczak v. Bodman,* 442 F.3d 1050, 1057 (7th Cir. 2006), the Seventh Circuit has cautioned that

> the conventional *McDonnell Douglas* framework is not very helpful for so-called reverse-discrimination claims. Because it is the unusual employer who discriminates against majority employees, a male plaintiff alleging gender discrimination must show something more than the fact that he is gendered.... Rather, the plaintiff in such cases must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites [or men] or evidence that there is something "fishy" about the facts at hand.

*Gore v. Indiana Univ.,* 416 F.3d 590, 592 (7th Cir. 2005) (internal quotations and citations omitted). When analyzing reverse discrimination claims, the Seventh Circuit has held that "to establish a prima facie case, in addition to meeting the second, third and fourth prongs above, such a plaintiff must show that 'background circumstances' exist to show an inference that the employer has 'reason or inclination to discriminate invidiously against whites' or evidence that 'there is something 'fishy' about the facts at hand.'" *Ballance,* 424 F.3d at 617.

### 2. Similarly Situated Comparators

Viewing the evidence and all reasonable inferences in Officer Shefcik's favor, his reverse race discrimination claim fails under the indirect method of proof because he has not presented sufficient evidence to fulfill the fourth prima facie element, namely, that Defendants treated similarly situated non-white police officers better than Officer Shefcik. To determine whether

employees are similarly situated, the Court's inquiry is a flexible one that considers "all relevant factors, the number of which depends on the context of the case." *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007) (quoting *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617 (7th Cir. 2000)). "An employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007); *see also Radue,* 219 F.3d at 617-18. As the Seventh Circuit recently explained "the purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination." *Humphries,* 474 F.3d at 405; *see also Barricks v. Eli Lilly & Co.,* 481 F.3d 556, 560 (7th Cir. 2007) (purpose of the similarly situated test "is to determine whether there are enough common factors between a plaintiff and a comparator – and few enough confounding ones – to allow for a meaningful comparison in order to divine whether discrimination was at play.").

The only alleged adverse employment action Officer Shefcik refers to in his legal memorandum concerning his prima facie case of reverse race discrimination involves the Calumet Park Police Department denying him a promotion in March 2006. Officer Shefcik maintains that Anthony Beattie, who is black, is an appropriate comparator under the similarly situated prima facie element based on Officer Beattie's promotion to the position of investigator over him. (Pl.'s Stmt. Facts ¶ 24; Defs.' Ex. 1, Shefcik Dep., at 25-28.)

Specifically, on August 31, 2005, the Calumet Park Police Department posted an opening

for an investigator and Officer Shefcik applied for the position. (Defs.' Stmt. Facts ¶ 46.) Two other candidates applied for the investigator position, including Anthony Beattie and Mark Smith, both of whom are black. (*Id.* ¶ 65.) Initially, the administration gave each candidate a scenario to take home, instructing each candidate to write an essay on how he would handle the scenario. (*Id.*) Thereafter, on March 16, 2006, Chief Davis, Assistant Chief Rockett, and Commander Melvin Davis interviewed Officer Shefcik. (*Id.* ¶ 66.) During the interview, these supervisors gave Officer Shefcik another scenario to complete in fifteen minutes. (*Id.*) Also, the above-named supervisors asked Officer Shefcik various questions at his interview. (*Id.*) The supervisors asked the same questions and went through the same process with each candidate at their interviews. (*Id.*)

In March 2006, the administration selected Anthony Beattie as the investigator over Officer Shefcik and Officer Smith. (*Id.*) Chief Davis explained that the administration selected Officer Beattie because he was the only candidate who gave the correct answer to an important interview question and that Officer Beattie had twenty years of investigative background and report writing skills. (*Id.* ¶ 67.) Assistant Chief Rockett explained that the decision was also based on the fact that Officer Shefcik did not have any prior experience as an investigator, whereas Officer Beattie had prior investigator experience at the police department in Dixmoor, Illinois. (*Id.* ¶ 69.) Further, Assistant Chief Rockett rated Officer Shefcik lower than Officer Beattie based on her belief that Officer Shefcik would not garner the support of the other officers to help him work on a project while Officer Beattie tried to incorporate other people into his projects. (*Id.* ¶ 71.)

As discussed, Officer Shefcik contends that Officer Beattie is an appropriate comparator

under the similarly situated prima facie element.  Specifically, Officer Shefcik contends that Officer Beattie was a probationary officer with six months seniority as a full-time police officer at Calumet Park, whereas, Officer Shefcik had 12 years seniority as a Calumet Park police officer.  (Pl.'s Stmt. Facts ¶ 24.)  Officer Shefcik, however, fails to provide any other pertinent factors, including whether he and Officer Beattie had comparable experience, education, or other relevant qualifications for the Court to consider.  *See Salas v. Wisconsin Dept. of Corr.,* 493 F.3d 913, 923 (7th Cir. 2007).  In his deposition testimony, for example, Officer Shefcik testified that the only information he knew about Officer Beattie's background and qualifications was that Officer Beattie had served as a detective for the Dixmoor Police Department.  (Defs.' Ex. 1, Shefcik Dep., at 28.)  In fact, the record supports that Officer Beattie had twenty years of investigative background and report writing skills.  (Defs.' Stmt. Facts. ¶ 67.)  Nevertheless, Officer Shefcik has not provided the Court with enough evidence upon which the Court can make a meaningful comparison to determine whether reverse race discrimination was at play. *See Barricks,* 481 F.3d at 560.

Next, Officer Shefcik argues that Officer Bryant Brooks, who is black, was accused of willful and wanton disrespect of a citizen and received a written reprimand, yet Officer Shefcik was given a one-day suspension for incompetency in the performance of a duty and disrespect and willful maltreatment of a person.[4]  (Pl.'s Stmt. Facts ¶ 37; Defs.' Stmt. Facts ¶ 34.) Although Officer Shefcik contends that he and Officer Brooks engaged in the "same conduct," Officer Shefcik fails to support this contention with evidence in the record.  In short, there are no

---

[4] In his response brief, Officer Shefcik does not argue that his one-day suspension was an adverse employment action in the context of his Title VII reverse race discrimination claim.

details in the record concerning Officer Bryant's conduct after which he received a written reprimand.

Again, Officer Shefcik has failed to set forth sufficient evidence for the Court "to determine whether there are enough common factors between a plaintiff and a comparator – and few enough confounding ones – to allow for a meaningful comparison in order to divine whether discrimination was at play." *See Barricks,* 481 F.3d at 560. Without more, Officer Shefcik has failed in his burden of establishing the fourth prima facie element of his reverse race discrimination claim under the indirect method of proof. *See Keri v. Board of Tr. of Purdue Univ.,* 458 F.3d 620, 628 (7th Cir. 2006) ("Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment"); *see also Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist., #163,* 315 F.3d 817, 822 (7th Cir. 2003) ("to withstand summary judgment, the non-movant must allege *specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations") (emphasis in original).

Because Officer Shefcik has failed to establish a prima facie case of reverse race discrimination under the indirect method of proof, the Court need not reach the issue of pretext under the *McDonnell Douglas* burden shifting method. *See Burks v. Wisconsin Dep't of Transp.,* 464 F.3d 744, 754 (7th Cir. 2006).

### B. Direct Method of Proof

Officer Shefcik also asserts that he can establish his reverse race discrimination claim under the direct method of proof. Under this method, a plaintiff may present either direct or circumstantial evidence of intentional discrimination. *Hossack v. Floor Covering Assocs. of Joliet, Inc.,* 492 F.3d 853, 861-62 (7th Cir. 2007). Direct evidence "relate[s] to the motivation of

the decisionmaker responsible for the contested decision," and "can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Id.* (citations omitted). Evidence used under the direct method of proof is "not limited to near-admissions by the employer that its decisions were based on a proscribed criterion ..., but also includes circumstantial evidence which suggests discrimination albeit through a longer chain of inferences." *Lewis v. City of Chicago,* 496 F.3d 645, 651 (7th Cir. 2007) (citation omitted).

The types of circumstantial evidence that may demonstrate intentional discrimination under the direct method of proof include: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Hemsworth v. Quotesmith.Com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007) (citation omitted). The last category is substantially the same as the evidence required under the indirect method of proof, which, as discussed above, Officer Shefcik has failed to establish. *See Venturelli v. ARC Cmty. Servs., Inc.,* 350 F.3d 592, 601 (7th Cir. 2003) (citation omitted). The Court thus turns to the other two categories of circumstantial evidence to determine whether Officer Shefcik has set forth direct evidence of reverse race discrimination.

Here, Officer Shefcik presents the deposition testimony of Officer Jerri Wilson-Spearman, who testified that Chief Davis referred to Officer Shefcik as a "white motherfucker" on several occasions. (Pl.'s Stmt. Facts ¶ 17.) Wilson-Spearman also testified that Chief Davis

stated "that white motherfucker, I'm going to get him if it's the last thing I do." (*Id.* ¶ 16.) In addition, Wilson-Spearman testified that at some point prior to November 2004 when she suggested that Chief Davis hire Melvin Davis as a police officer, Chief Davis asked her if Melvin Davis was black. (*Id.* ¶ 18.) When Wilson-Spearman answered that Melvin Davis was black, Wilson-Spearman testified that Chief Davis commented: "Oh good. Give me his number because I don't want no white motherfuckers in here anyway." (*Id.*)

Although Defendants contest the truthfulness of these comments, they maintain that – assuming the comments are true for purposes of this summary judgment motion – Officer Shefcik's argument fails because he does not identify when these statements were made and if they were made in reference to any adverse employment action. Indeed, "isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." *Hemsworth,* 476 F.3d at 491 (citation omitted). Nevertheless, " a particular remark can provide an inference of discrimination when the remark was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Id.*

Here, there is no evidence in the record as to when Chief Davis made these comments and if he made them in reference to any adverse employment action, as required under the standard set forth in *Hemsworth. See also Dandy v. United Parcel Serv., Inc.,* 388 F.3d 263, 272 (7th Cir. 2004) ("Racial epithets or stray remarks may be direct or circumstantial evidence of intentional discrimination if they are sufficiently connected to the employment decision."). Although these alleged comments were "off-color and ... inappropriate for the workplace," Officer Shefcik has failed to set forth any evidence that Chief Davis' comments were connected

to an adverse employment action as defined by Title VII.  *See Ptasznik v. St. Joseph Hosp.,* 464

F.3d 691, 695 (7th Cir. 2006).  Therefore, Officer Shefcik has not set forth sufficient evidence to

create a genuine issue of material fact that Chief Davis discriminated against him based on racial

animus.  The Court grants Defendants' summary judgment motion as to Officer Shefcik's

reverse race discrimination claim.

### III.    Title VII Retaliation Claim

Officer Shefcik also brings a Title VII retaliation claim against Defendants.  Under Title

VII, it is unlawful for an "employer to discriminate against any of his employees ... because he

has opposed any practice made an unlawful employment practice by this subchapter, or because

he has made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Title VII's "anti-

retaliation provision seeks to secure th[e] primary objective [of] preventing an employer from

interfering (through retaliation) with an employee's efforts to secure or advance enforcement of

the Act's basic guarantees."  *Burlington N. & Santa Fe Ry. Co. v. White,* ___ U.S. ___, 126 S.Ct.

2405, 2412, 165 L.Ed.2d 345 (2006).  "Like other Title VII claims, retaliation claims may be

approached under either a direct or an indirect method of proof."  *Bernier v. Morningstar, Inc.,*

495 F.3d 369, 375 (7th Cir. 2007).  Officer Shefcik attempts to establish his Title VII retaliation

claim under the direct method of proof.

"Under the direct approach, the employee must show evidence that he engaged in a

statutorily protected activity (such as bringing a Title VII claim) and as a result, suffered an

adverse action."  *Roney v. Illinois Dep't of Transp.,* 474 F.3d 455, 459 (7th Cir. 2007).  As such,

Officer Shefcik must present evidence of (1) a statutorily protected activity, (2) a materially

adverse action, and (3) a causal connection between the two. *See Burks,* 464 F.3d at 758 (citing *White,* 126 S.Ct. at 2413).

The parties do not dispute that Officer Shefcik's EEOC Charge and Supplemental EEOC Charge are statutorily protected activities, and thus the Court turns to the alleged adverse actions and whether Officer Shefcik has presented sufficient evidence to establish a causal connection between the adverse actions and the filing of his EEOC Charges. *See id.* Officer Shefcik contends that he suffered materially adverse actions when: (1) he was assigned to strip mall detail; (2) he was not selected for the Criminal Intelligence Division ("CID") unit; (3) he received a five-day suspension for insubordination; and (4) he was denied a promotion to the position of investigator in March 2006.

The range of conduct prohibited under Title VII's retaliation provision is broader than Title VII's discrimination provision. *Phelan v. Cook County,* 463 F.3d 773, 789 (7th Cir. 2006); *see also Roney,* 474 F.3d at 461 ("discriminatory acts proscribed by Title VII's anti-retaliation provision are not limited to those that affect the terms and conditions of one's employment"). Recently, the Supreme Court clarified "materially adverse actions" under Title VII's anti-retaliation provision:

> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.... In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

*White,* 126 S.Ct. at 2414-15 (citations and internal quotations omitted).

Officer Shefcik offers no explanation why a reasonable employee would find detail at the strip mall, his five-day suspension, or not making the CID unit materially adverse, namely, that

"it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White,* 126 S.Ct. at 2414-15. Meanwhile, although Officer Shefcik asserts that the police department's failure to pick him for the CID unit constitutes a materially adverse action, Officer Shefcik testified at his deposition that he did not tell anyone he wanted to be a member of the CID unit. (Defs.' Stmt. Facts ¶ 48; Ex. 1, Shefcik Dep., at 46-47.) Further, Officer Shefcik never served his five-day suspension for insubordination. (Defs.' Stmt. Facts ¶ 63.) Finally, Officer Shefcik testified at his deposition that it was Commander Davis – who is not a named Defendant in this lawsuit – and not Chief Davis who assigned him to strip mall duty. (*Id.* ¶ 50; Defs.' Ex. 1, Shefcik's Dep., at 261-62.) Therefore, the only adverse action that remains in contention is the administration's promotion of Officer Beattie to investigator over Officer Shefcik in March 2006.

Thus, the Court must determine whether Officer Shefcik has established a casual connection between the police department's failure to promote him to investigator and his EEOC Charges. *See White,* 126 S.Ct. at 2413*; Burks,* 464 F.3d at 758. Officer Shefcik relies on the timing of his EEOC Charges and the police department's failure to promote him in March 2006. *See Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 793 (7th Cir. 2007) ("The causal link of a retaliation claim is frequently established by showing that there was a suspiciously short period of time between the employee's complaint and the adverse employment action."). "[M]ere temporal proximity," however, "is normally not enough to create an issue of fact on causation in the absence of other evidence." *Pantoja v. American NTN Bearing Mfg. Corp.,* 495 F.3d 840, 849 (7th Cir. 2007); *Stone v. City of Indianapolis Public Util. Div.,* 281 F.3d 640, 644 (7th Cir. 2002) ("mere temporal proximity between the filing of the charge of discrimination and the

action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue.").  In other words, "the mere fact that one event preceded another does nothing to prove that the first event caused the second; the plaintiff also must put forth other evidence that reasonably suggests that her protected [] activities were related to her employer's discrimination."  *Burks,* 464 F.3d at 758-59 (internal quotations and citations omitted).

Officer Shefcik filed his first EEOC Charge of Discrimination on November 14, 2005, and filed his Supplemental EEOC Charge on March 10, 2006.  Chief Davis, Assistant Chief Rockett, and Commander Melvin Davis promoted Officer Beattie to investigator sometime after March 16, 2006 – over four months after Officer Shefcik filed his initial EEOC Charge.  (Defs.' Stmt. Facts ¶ 66.)  On more than one occasion the Seventh Circuit has held that "a temporal connection of four months fail[s] to establish a causal connection between a protected activity and an adverse action."  *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 665 (7th Cir. 2006) (citing cases).

On the other hand, Officer Beattie's promotion over Officer Shefcik is on the heels of Officer Shefcik's March 10, 2006, Supplemental EEOC Charge, and thus the Court looks to whether Officer Shefcik has presented evidence that reasonably suggests that the police department's failure to promote him relates to reverse race discrimination.  *See Burks,* 464 F.3d at 758-59.  Again, Officer Shefcik has failed to set forth any such evidence or evidence that Chief Davis was aware of his March 10, 2006, Supplemental EEOC Charge.  In fact, Officer Shefcik's  entire argument consists of one sentence:  "The close proximity of these incidents in relation to the filing of his charges demonstrates a causal nexus."  (R. 49-1, Pl.'s Resp. Brief, at

15.)

Moreover, Defendants have presented undisputed evidence that Chief Davis selected Officer Beattie because Officer Beattie was the only candidate who gave a correct answer to an important interview question, as well as Officer Beattie's twenty years of investigative background and report writing skills.  (Defs.' Stmt. Facts. ¶ 67.)  Also, Assistant Chief Rockett explained that the decision to hire Officer Beattie was based on the fact that Officer Shefcik did not have any prior experience as an investigator, but that Officer Beattie did.  (*Id.* ¶ 69.)  Also, Assistant Chief Rockett rated Officer Shefcik lower than Officer Beattie based on her belief that Officer Shefcik would not garner the support of the other officers to help him work on a project while Officer Beattie tried to incorporate other people into his projects.  (*Id.* ¶ 71.)  In sum, Chief Davis' and Assistant Chief Rockett's reasons for hiring Officer Beattie over Officer Shefcik undermine any inference of suspicious timing.  *See Tomanovich,* 457 F.3d at 665.  Therefore, "this is not the rare case in which temporal proximity, without more, establishe[s] a causal connection."  *Id.*

Viewing the evidence and all reasonable inferences in favor of Officer Shefcik, he has failed to set forth sufficient evidence creating a genuine issue of material fact that the Calumet Park Police Department retaliated against him for filing his EEOC Charge and Supplemental EEOC Charge.  Therefore, the Court grants Defendants' summary judgment as to Officer Shefcik's Title VII retaliation claim.

## <u>CONCLUSION</u>

For these reasons, the Court grants in part and denies in part Defendants' Motion for

Summary Judgment.

**Dated:** November 7, 2007

                                           **ENTERED**

                                           _____

                                           **AMY J. ST. EVE**
                                           **United States District Judge**